UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WANDA J. GIBBS                                                              PLAINTIFF


        VS.                        Civil No. 2:14-cv-02184-MEF


CAROLYN W. COLVIN,                                                        DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Wanda J. Gibbs, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claim for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial

review, the court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.        Procedural Background:

Plaintiff filed her application for DIB on September 16, 2011 and SSI on September 19, 2011,

alleging an onset date of July 31, 2008, due to hepatitis C, asthma, short term memory loss, and

depression. (T. 31-32, 78, 456) Plaintiff's applications were denied initially and on

reconsideration[1]. (T. 12, 41-43, 457-460, 37-38) Plaintiff then requested an administration hearing,

which was held in front of Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, on

December 3, 2012.  Plaintiff was present and represented by counsel.

---

[1] The Court could not locate in the record Plaintiff's SSI reconsideration denial. Since this was not a contested issued, the Court referenced the ALJ's Decision for the Plaintiff's reconsideration denial of her SSI claim. (T. 12)

At the time of the hearing, Plaintiff was 47 years of age, and had a 9th grade education. (T. 464) Plaintiff's past relevant work included working as an assembler at a factory from 1995 to 1999, a store clerk from 1999 to 2009, and a box assembler from 2006 to 2007. (T. 79, 130)

On March 1, 2013, the ALJ found Plaintiff's complaints of back pain without any neurological impairment and obesity severe; however, he found Plaintiff's hepatitis C, affective disorder, and marked remote history of mixed substance abuse without end organ damage not severe. (T. 14-15) The ALJ determined Plaintiff's hepatitis C did not have more than a *de minimis* effect on the Plaintiff's ability to perform basic work activities; and, Plaintiff's mental impairments of affective disorder and marked remote history of mixed substance abuse without end organ damage did not cause more than a minimal limitation in the Plaintiff's ability to perform basic mental work activities. (T. 15) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from July 31, 2008, through the date of his Decision issued March 1, 2013. The ALJ determined Plaintiff had the RFC to perform a full range of medium work. (T. 17)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 17, 2014. (T. 4-7) Plaintiff then filed this action on August 28, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 5) Both parties have filed briefs, and the case is ready for decision. (Doc. 12 and 15)

## II.   <u>Applicable Law:</u>

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

3

Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on July 31, 2008, through the date of the ALJ's Decision issued March 1, 2013. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ erred in step-two of his analysis; (B) the ALJ erred in his RFC determination; and, (C) the ALJ erred in step-four of his analysis. (Doc. 12, pp. 10-17)

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### Step-Two Analysis:

Plaintiff alleges the ALJ erred in not finding Plaintiff's hepatitis C and mental impairments severe. (Doc. 12, pp. 10-12) The undersigned has reviewed the record and finds substantial evidence supports the ALJ's step-two analysis.

As mentioned above, the Commissioner uses a five step sequential process to evaluate and determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe."  *Simmons,* 264 F.3d at 754; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An impairment is "not severe" if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic

work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. See, e.g., *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff argues the ALJ erred when he failed to find Plaintiff's hepatitis C severe. (Doc. 12, pp. 11-12) In August 2011, Plaintiff sought treatment from Dr. David W. Hutton due to gallstones, right upper quadrant pain, and jaundice. A computerized tomography ("CT") scan of Plaintiff's abdomen performed on August 25, 2011, showed a fatty liver with edema about the porta hepatis and portal triad end which could have been due to ascites; however, it was difficult to exclude

5

hepatitis. (T. 245) Further testing resulted in a diagnosis of hepatitis C.  A biopsy of Plaintiff's liver showed an intense chronic inflammatory infiltrate which extended from the portal area into the liver plates. (T. 207)

In March 2012, after missing several follow up appointments due to financial constraints, Plaintiff met with Dr. Derrick Richardson, gastroenterologist with Cooper Clinic, regarding her hepatitis C.  Plaintiff reported no complaints, and Dr. Richardson discussed the natural course of hepatitis C and the compounding factors, such as alcohol. (T. 365) Dr. Richardson indicated her liver function test was normal, she had fatty liver disease, and suggested she take Vitamin E daily and work on weight reduction. (T. 365, 370) Dr. Richardson's notes indicated Plaintiff was to return in six months; however, she needed to be psychologically stable in order to consider therapy. (T. 366)

In October 2012, at Plaintiff's follow up appointment with Dr. Richardson, Plaintiff reported having a "meltdown" since her last visit. (T. 363) Dr. Richardson assessed Plaintiff with hepatitis C in a patient with severe clinical depression.  Since Plaintiff continued to have difficulty in maintaining control from a mental standpoint, Dr. Richardson determined there was no urgency for treatment and noted her depression needed to be well controlled by her psychiatrist before he could consider treatment. (T. 363)

Throughout Plaintiff's treatment records for hepatitis C, Plaintiff never complained about fatigue or joint pain.  Moreover, Dr. Richardson's opinion about "no urgency for treatment" shows Plaintiff's hepatitis C was not as severe as Plaintiff had alleged. Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record.  *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt*, 204 F.3d at 852 (plaintiff bears the burden to establish severe impairments at step-two of the

sequential evaluation). In the present case, the medical evidence of record does not support a conclusion that Plaintiff's hepatitis C was severe.

Next, Plaintiff argues the ALJ erred when he failed to find Plaintiff's mental impairments severe. There are three steps used in evaluating whether a Plaintiff's mental impairment is severe. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d).  In applying the special technique the ALJ must first evaluate Plaintiff's symptoms, signs, and laboratory findings to determine whether Plaintiff had a medically determinable impairment. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Once the ALJ has established Plaintiff has a medically determinable impairment, the ALJ must rate the functional limitation using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and, decompensation. The ALJ is to rate the degree of functional limitation in the first three areas as none, mild, moderate, marked, and extreme.  The ALJ will rate decompensation as none, one or two, three, four or more. After rating the Plaintiff's functional limitation resulting from Plaintiff's impairment, the ALJ determines the severity of the Plaintiff's impairments. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d). If the ALJ rates the degree of claimant's limitation in the first 'three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

In the present case, the ALJ determined Plaintiff's affective disorder and marked remote history of mixed substance abuse without end organ damage were medically determinable impairments. Next, the ALJ rated the functional limitations using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and decompensation.

The ALJ determined Plaintiff had mild limitation regarding her activities of daily living. In making this determination, the ALJ took into consideration Plaintiff's Function Reports where she took care of pets and family members, with help from her son.  She prepared meals; washed dishes; did laundry twice a week; drove a car; shopped in stores for food and personal care products; watched television; surfed the internet; had no problems with personal care; and, reported to her counselors she took care of her wheelchair bound mother and father who had been diagnosed with cancer. (T. 15)

In the area of social functioning, the ALJ determined Plaintiff had mild limitation.  Plaintiff shopped in stores twice a month for thirty minutes to an hour at a time. She spent time visiting on the phone with others; however, she reported difficulty getting along with family, friends, and neighbors and was crabby most of the time.  On occasion, Plaintiff met her step-mother at Wal-Mart. (T. 15)

In the third function area, concentration, persistence, or pace, the ALJ determined Plaintiff had mild limitation.  Plaintiff could handle finances and was able to follow written instructions, but had difficulty with spoken instructions. (T. 15-16) Concerning the fourth area, the ALJ found that Plaintiff had not experienced any episodes of decompensation of extended duration. (T. 16)

Because Plaintiff's medically determinable impairments caused no more than a mild limitation in any of the first three functional areas, and there were no episodes of decompensation, the ALJ determined Plaintiff's medically determinable mental impairments were non-severe. (T. 16)

In determining the Plaintiff's degree of limitation in the paragraph "B" mental function analysis, the ALJ considered the following evidence.  Plaintiff began mental health treatment at Western Arkansas Counseling and Guidance Center in April of 2012, after being referred by her

attorney.  Plaintiff indicated she sought treatment for anger, depression, and difficulty with marital separation. (T. 359) Plaintiff also stated that she was trying to get disability. (T. 359)

On May 30, 2012, Plaintiff had an evaluation and diagnosis at Western Arkansas Counseling and Guidance with Advanced Nurse Practitioner James Gattis ("ANP Gattis").  Plaintiff was 47 years of age and indicated she had applied for disability. Plaintiff had a lot of stress from taking care of her mother, who was confined to a wheelchair; she had depression that came and went; and, most recently had severe depression that had lasted for two weeks. (T. 346) She was prescribed Prozac, Xanax, and Ambien by her primary care physician, Dr. Stephen Carney. (T. 346) Plaintiff complained of amotivation, social isolation, crying spells, and a feeling of hopelessness.  Plaintiff described episodes of anger.  Plaintiff had smoked for fifteen years; drank a pitcher of tea a day; had a history of using cannabis around age 13, last smoked it over a year ago; and, last used methamphetamine in 2009, where she intravenously used at least a gram a day. (T. 346) Plaintiff had been arrested for child endangerment, manufacturing methamphetamine, and conspiracy to manufacture methamphetamine; however, she was not on probation or parole at the time of the evaluation. (T. 347)

At the time of the evaluation, Plaintiff was appropriately groomed and dressed with proper hygiene. Plaintiff was pleasant and cooperative. (T. 348) Plaintiff's mood was tired and affect was pleasant.  Plaintiff's speech was of normal rate and tone; her thought process was goal-directed and logical without flight of ideas or loss of association; her judgment and insight were appropriate; she was alert and oriented; she provided proper past and present medical history; her recent, remote, and immediate memory was intact; she recalled three of three items without prompting; and, her concentration was appropriate.  The evaluation did not reveal any cognitive deficits and her abstract thinking was somewhat concrete; however, her intelligence was in the low

average range. (T. 348) Plaintiff was diagnosed with mood disorder, not otherwise specified; methamphetamine dependence, full sustained remission; and, assessed a GAF score of 60. (T. 348)

Licensed Professional Counselor Dinora Reyes ("LPC Reyes") noted Plaintiff suffered from depression and experienced significant anxiety. Plaintiff reported a significant decrease in energy and motivation. She continued to gain weight, but LPC Reyes suspected it was due to her medical problems. She appeared concerned about her health and hoped her physicians would be able to help her. Plaintiff's health was the main source of her distress. (T. 350)

By June 20, 2012, Plaintiff's mood was better and her affect was pleasant. (T. 345) Plaintiff indicated she was getting out and doing things with friends and tried to avoid her husband's phone calls. (T. 343) However, in October 2012, Plaintiff was having a difficult time with her divorce and she called the emergency number during a panic attack indicating she wanted to harm her husband. (T. 340) Plaintiff was taken to the emergency room and eventually allowed to return home. During the course of her treatment, Plaintiff increased her Prozac on her own. ANP Gattis felt as if Plaintiff's emotional instability was due to the multiple social stressors in her life and not to an increase in her Prozac. (T. 338)

Dr. Patricia Walz, psychologist and state agency medical consultant, performed a mental diagnostic evaluation of the Plaintiff on January 5, 2012. Plaintiff indicated she applied for disability when she found out she had hepatitis C that was active and she needed help with it, because she did not want to die. (T. 284) Plaintiff had depression for the past five years. She was fired from her last job in 2007, when she made an inappropriate joke. (T. 284) Plaintiff said she had a lot of stress, which brought the anxiety. (T. 284) Plaintiff had never been hospitalized for psychiatric problems and had been prescribed Prozac and Xanax. (T. 285)

Plaintiff was cooperative in the evaluation, but made dramatic gestures. Her mood was anxious and affect was consistent with her mood. Her thought processes were logical and goal oriented; but, her thought content was notable for death wish without suicidal ideation. Plaintiff was very slow to give the correct date and time, after stating she did not know. (T. 287) Plaintiff reported some problems learning as a child, although she was not enrolled in special education classes. (T. 288) Plaintiff indicated she did not drive often; she sent someone else to shop; she did not belong to any clubs, organizations, or churches; and, she had no hobbies or interests. (T. 288) Plaintiff's ability to communicate and interact in a socially adequate manner was limited by her dramatic tendencies; however, her speech was clear and intelligible. (T. 288)

Dr. Walz estimated Plaintiff's IQ was borderline range and diagnosed her with major depression, recurrent, moderate without psychosis; history of methamphetamine dependence and other substance abuse; antisocial traits; and, assessed a GAF score of 60-70. (T. 288) Dr. Walz recommended intellectual assessment and assessment of effort testing. Because Dr. Walz believed Plaintiff's intellectual functioning was in the borderline range, she believed Plaintiff would have difficulty with complex tasks. Plaintiff's attention and concentration were significantly impaired at the evaluation; however, Dr. Walz noted her performance was poor. (T. 288) Regarding Plaintiff's ability to sustain persistence in completing tasks, Dr. Walz noted Plaintiff gave up easily. Plaintiff's speed of information processing was average. (T. 289) Based upon her examination, Dr. Walz determined Plaintiff could not manage funds without assistance; however, Plaintiff demonstrated very poor effort. (T. 289)

After reviewing the record, the undersigned finds substantial evidence supports the ALJ's decision. Dr. Walz noted that Plaintiff had the capacity to cope with mental cognitive work demands as long as they were not complex. (T. 289) While Dr. Walz opined Plaintiff needed

assistance with managing funds, Plaintiff reported that she was able to pay bills, count change, and handle her own finances. (T. 72) Considering the Plaintiff's poor effort and poor performance, the ALJ appropriately discounted Plaintiff's complaints regarding the severity of her mental impairments. *See Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) ("The ALJ was entitled to draw conclusions about Baker's credibility based on the FCE pain-replication and distraction analyses indicating that Baker was exaggerating symptoms and giving less than his full effort"), citing *Clay v. Barnhart,* 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (noting that two psychologists' findings that the claimant was "malingering" on her IQ tests cast suspicion on the claimant's motivations and credibility).

In light of the evidence and the ALJ's proper use of the special technique for the evaluation of Plaintiff's mental impairment, the Plaintiff had the burden of showing a severe impairment significantly limited her physical or mental ability to perform basic work activities and she failed to meet that burden. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001)*.* The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairments of complaints of back pain without any neurological impairment and obesity.

**RFC Determination:**

Plaintiff argues the ALJ's RFC determination was inconsistent with the record. (Doc. 12, pp. 13-16) The Court disagrees.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838,

844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

Plaintiff first argues the ALJ erred in his RFC determination when he failed to give valid reasons for discrediting Dr. Carney's medical source statement. (Doc. 12, pp. 13-14)

The regulations provide that if an ALJ finds a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) However, if the ALJ finds the treating physician's opinion was not entitled to controlling weight, the ALJ utilizes the following factors to assign a weight to the opinion: examining relationship; treatment relationship including the length of the treatment relationship and the frequency of examination and nature and extent of the treating relationship; supportability; consistency;

13

specialization; and, any other factors the Plaintiff brings to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6).

"When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000). "As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id.* (internal quotations and citations omitted). However, the Eighth Circuit has recognized "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).

In the present case, Dr. Carney filled out a check the box medical source statement on March 22, 2012. In that statement Dr. Carney opined Plaintiff was limited to occasionally lifting ten pounds; frequently lifting less than ten pounds; she would only be able to stand and or walk for less than two hours in an eight hour workday; and, Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort. (T. 332) The form has an area for Dr. Carney to render his opinion and give medical or clinical findings to support his conclusions, and he failed to do so. (T. 333) Dr. Carney also opined Plaintiff could never climb and only occasionally balance, kneel, crouch, or crawl. (T. 333) Dr. Carney indicated Plaintiff needed to have limited exposure to temperature extremes, dust, vibration, humidity/wetness, hazards, and fumes. (T. 334)

The ALJ discounted Dr. Carney's opinion because it was a "check-off form" and it failed to cite any supporting clinical test results or findings, and because Dr. Carney's physician notes did

not record any significant limitations due to the alleged impairments. (T. 19) The Eighth Circuit has recognized that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration." *Wildman,* 596 F.3d at 964. Furthermore, the ALJ discounted the assessment because it was based upon Plaintiff's subjective complaints rather than objective or clinical findings. (T. 20) *See Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001) (ALJ properly discounted the physician's medical source statement because the statement contained limitations that "stand alone," did not exist in the physician's treating notes, and were not corroborated through objective medical testing.)

Even though Dr. Carney had been treating the Plaintiff since 2009, Dr. Carney did not place any restrictions or limitations on the Plaintiff.  Plaintiff argues Dr. Carney's records showed Plaintiff had persistent "back pain, myalgia, and generalized weakness" (Doc. 12, pp. 14); however, those were Plaintiff's subjective complaints of pain and not Dr. Carney's examination results. (T. 158, 160, 164, 178, 182, 184, 186, 374, 376, 378, 380, 384, 386, 388) Dr. Carney's examinations only showed a circle around Plaintiff's decreased range of motion in her back and extremities. (T. 157, 159, 161, 385, 387, 389) There were no explanations, examination notes, or anything detailing the extent of her decreased range of motion - just a circle.

The Court concludes that the ALJ properly discounted Dr. Carney's medical source statement after finding the opinion was not supported by objective evidence and the treatment notes did not record any significant limitations due to the alleged impairments. *See Wagner*, 499 F.3d at 849 (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions).

Plaintiff also argues the ALJ should have re-contacted Dr. Carney if he felt Dr. Carney's opinion was not fully supported, in order to allow him to clarify and explain his opinion. (Doc. 12, pp. 13) If an ALJ discounts a medical source's opinion, and if the basis for the opinion is unclear, then the ALJ should make every reasonable effort to re-contact that source for clarification. However, if the ALJ concludes the consultative doctor's opinion was more limiting than the objective medical evidence supported, it is within the ALJ's discretion to determine whether or not to re-contact the medical source. (T. 25) 20 C.F.R. §§ 404.1520(b)(c)(1), 416.920b(c)(1) ("We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence.")

Instead of re-contacting Dr. Carney, the ALJ turned to the opinion of Dr. David Hicks, a non-examining state agency medical consultant, for guidance regarding Plaintiff's RFC.  Dr. Hicks reviewed the record on November 1, 2011, and determined Plaintiff could occasionally lift fifty pounds; frequently lift twenty five pounds; sit, stand, and walk about six hours in an eight hour work day; and, she was unlimited pushing and pulling. (T. 275) Dr. Hicks determined Plaintiff had the following medically determinable impairments: cholecystitis with cholesteric jaundice, status post laparoscopic cholecystectomy; hepatitis C, without evidence of cirrhosis or liver failure; and, a history of asthma, without evidence of exacerbation or aggressive intervention.  Dr. Hicks opined Plaintiff had the RFC to perform medium work. (T. 281) Dr. Hicks noted there was insufficient evidence to rate Plaintiff's RFC as of her date last insured December 31, 2008. (T. 282) Dr. Bill F. Payne, non-examining state agency medical consultant, reviewed the evidence on April 11, 2012, and affirmed Dr. Hicks's assessment. (T. 323)

After reviewing the record the Court finds the ALJ appropriately discounted Dr. Carney's medical source statement as it was inconsistent with and not supported by his treatment records.

16

Plaintiff further argues the ALJ erred when he failed to include in his RFC determination Plaintiff's hepatitis C and mental impairments. (Doc. 12, pp. 14) Contrary to Plaintiff's argument, the record was not "full of references to her anger, irritability, mood swing, poor memory, lack of energy, and motivation, fatigue, anhedonia, anxiety, and other signs and symptoms of mental illness." (Doc. 12, pp. 15)  Rather, substantial evidence supported the ALJ's determination that neither Plaintiff's hepatitis C nor her mental impairments significantly limited her physical or mental ability to perform basic work activities, and no restrictions were placed upon the Plaintiff by her treating physicians.

Finally, the Plaintiff argues the ALJ failed to assess Plaintiff's credibility as part of his RFC analysis. (Doc. 12, pp. 15) The Plaintiff is mistaken.

It is the ALJ's duty to determine the Plaintiff's RFC.  Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall,* 274 F.3d at 1217-18.

Among the ALJ's findings in his Decision, was a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T. 15) While the ALJ employed a bit of Social Security boilerplate, the ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, testimony of Plaintiff's stepmother, and testimony at the hearing in accordance with applicable regulations, rulings and Eighth Circuit case law. (T. 18)

Although the ALJ did recognize Plaintiff's degree of pain was substantiated by the record, he found Plaintiff's "degree of pain relief seeking behavior and treatment [were] not indicative of a

degree of pain that would limit activities beyond the scope of the residual functional capacity as determined in this decision." (T. 19) The ALJ also determined Plaintiff's medications were relatively effective in controlling her symptoms, and she did not allege any side effects that would interfere with her ability to perform work activities. (T. 19)

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, opinion evidence, state-agency evidence, and the testimony of the Plaintiff, the Court concludes that the RFC determined by the ALJ is supported by substantial evidence.

**<u>Step-Four Analysis:</u>**

Plaintiff's final argument is that the ALJ erred at step-four of his analysis when he determined Plaintiff could perform her past relevant work as a box maker and production assembler. (Doc. 12, pp. 16-17) At step four, the ALJ determines "whether a claimant's impairments keep [him] from doing past relevant work." *Wagner,* 499 F.3d at 853 (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996)). If "the claimant has the [RFC] to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). The burden at step four remains with the claimant to prove his RFC and establish that she cannot return to her past relevant work. *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

In the present case, the ALJ asked the vocational expert the demands of Plaintiff's past relevant work.  The vocational expert testified the box maker occupation was unskilled and performed at a

18

medium exertional level, and the production assembler was unskilled and performed at a light exertional level. (T. 21, 468-469) Based upon this testimony the ALJ found Plaintiff retained the RFC to perform her past relevant work. (T. 21)

The ALJ considered the vocational expert's testimony, which was consistent with the *Dictionary of Occupational Titles*, as to what was generally performed in the national economy. *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012), citing 20 C.F.R. §404.165060(b)(2), 416.960(b); *Wagner*, 499 F.3d at 853-854 (an ALJ can "consider the demands of the claimant's past relevant work either as the claimant actually perform it or, as here, as performed in the national economy"). The undersigned finds substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as a box maker and production assembler. The ALJ's determination was supported by objective medical evidence, including opinions of state agency medical consultants, which expressed the opinion Plaintiff could perform a full range of medium work.

### IV.    Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 12th day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE